FILED

2015 Sep-28 PM 02:30
U.S. DISTRICT COURT
N.D. OF ALABAMA

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION**

| | | |
|---|---|---|
| **GEORGE WILLIAM WHEELER** | ) | |
| | ) | |
| **Petitioner,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 5:12-cv-08027-KOB** |
| | ) | **5:09-cr-00260-KOB-HGD-1** |
| | ) | |
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| **Respondent.** | ) | |

**MEMORANDUM OPINION**

## I.    Introduction

This case is before the court on a motion to vacate, set aside or correct a sentence filed by Petitioner, George William Wheeler, pursuant to 28 U.S.C. § 2255.[1] (Cv. Doc. 5).[2] A jury convicted Wheeler of one count of conspiracy to possess with intent to distribute five kilograms or more of cocaine.

Wheeler asserts 27 grounds in support of his motion to overturn his conviction. (Cv. Docs. 5 & 7). These grounds can be grouped into three categories: claims based on parallel proceedings in state court, substantive claims based on prosecutorial misconduct, and claims based on ineffective assistance of counsel. The court has interpreted Wheeler's claims liberally

---

[1]A prisoner "claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States . . . may move the court . . . to vacate, set aside or correct the sentence." 28 U.S.C. § 2255.

[2]Documents from Wheeler's criminal trial, case number 5:09-cr-00260-KOB-HGD-1, are designated Cr. Doc. ___. Documents from Wheeler's § 2255 action, case number 5:12-cv-08027-KOB, are designated Cv. Doc. ___.

1

because he is not represented by counsel on his § 2255 claim. *See Mederos v. United States*, 218 F.3d 1252, 1254 (11th Cir. 2000) ("Pro se filings, including those submitted by [the petitioner] in the present case, are entitled to liberal construction."). After reviewing Wheeler's filings, the court finds that his arguments are without merit. Accordingly, the court **DENIES** Wheeler's motion to vacate, set aside, or correct his sentence.

## II.    Background

Esteban Lagunas was a confidential informant for law enforcement in Decatur, Alabama. (Cr. Doc. 55, at 62-63). Lagunas began working with Javier Limon, a drug dealer in Decatur. (*Id.* at 35, 65, 101). Limon in turn introduced Lagunas to the Petitioner, George Wheeler. (*Id.* at 103). Wheeler, Limon, and Lagunas began discussing "how much cocaine Wheeler could turn around and sell." (Cr. Doc. 55, at 108; Cv. Doc. 18, at 4). Lagunas testified that Wheeler agreed to buy two kilos of cocaine from him initially, but said that "he could sell up to five" later. (Cr. Doc. 56, at 158-59, 165-66).

Lagunas wore a recording device and recorded multiple conversations in which Limon, Lagunas, and Wheeler discussed the purchase of cocaine. (*See*, *e.g.*, Cr. Doc. 55, at 66-67). The government played these audio tapes for the jury. (Cr. Doc. 55, at 107, 111; Cr. Doc. 56, at 121, 122, 125, 128, 130, 132, 134, 137, 138). On these tapes, Wheeler discussed the total amount of cocaine he planned to buy, after he had purchased the initial two kilos. Wheeler stated, "I can get rid of two in one day. Come by [sic]. . . another two. You know, I can do it like that. . ." (Gov. Ex. 2A, at 19). When Lagunas asked how many kilos of cocaine Wheeler would buy for a week, Wheeler said, "Probably. . . maybe five." (*Id.*, at 21). Wheeler further stated, "Give me five then.

2

I, I. . . I mean, but not, not right now. Let's just try one at a time . . . .Just give me two. Then I go with this guy, that guy. . ." (*Id.*, at 31). Wheeler negotiated with Limon and Lagunas on the price of the cocaine and agreed to buy two kilos at $27,000 a piece. (Gov. Ex. 6, at 13-16). Limon and Lagunas assured Wheeler that in the future they would sell cocaine to him at a lower price. (*Id.*, at 15).

On June 9, 2009, at about 1:00 p.m., Wheeler met with Lagunas in the parking lot of a Holiday Inn. (Cr. Doc. 56, at 131-32). Wheeler got into Lagunas's car, where undercover police officer Terry Lucas "flash[ed] the dope" to Wheeler. (*Id.* at 132, 172). Wheeler left to get $54,000 to pay for 2 kilos of cocaine, and returned to the Holiday Inn at about 4:30 p.m. with $13,970 in cash. (Cr. Doc. 55, at 60-61; Cr. Doc. 56, at 140, 142; Cr. Doc. 57, at 329-30). Wheeler got into Lagunas's car and showed Lagunas the cash he had brought with him. (Cr. Doc. 56, at 141-42). Lagunas got out of his car and called the FBI. (*Id.*, at 142). Wheeler then returned to his own car, and the police arrested him. (*Id.*, at 142, 196).

Numerous attorneys represented Wheeler throughout the criminal proceedings brought against him. John Mays represented Wheeler in state court, Brian Clark represented Wheeler in pre-trial proceedings, Bruce Gardner represented Wheeler at trial, Kevin Roberts represented Wheeler at sentencing, and Glennon Threatt represented Wheeler on appeal. (Cv. Doc. 5, at 7-8).

At Wheeler's federal trial, the government presented testimony of FBI agents (Cr. Doc. 55, at 31, 78, 87, 90; Cr. Doc. 56, at 202, 208); local police officers (Cr. Doc. 56, at 170, 173); and its confidential informant, Esteban Lagunas (Cr. Doc. 55, at 95). The government also played for the jury multiple recordings of conversations between Limon, Lagunas, and Wheeler. (Cr. Doc. 55, at 107, 111; Cr. Doc. 56, at 121, 122, 125, 128, 130, 132, 134, 137, 138).

In addition, the government played an aerial surveillance video of Wheeler taken on the day of his arrest. This video showed Wheeler meeting with Lagunas at the Holiday Inn, traveling to various places around town, returning to the Holiday Inn, and finally coming back to his car where police arrested him. (Cr. Doc. 56, at 184-97). Lieutenant White, the special operations manager for the Decatur Police Department, described the events in the video as it was played for the jury. (*Id.*). The government also played for the jury two videos taken from the ground on the day of Wheeler's arrest by FBI agent Brian Oakley. (*Id.*, at 202-06).

The government additionally presented the testimony of Will Hines, Demetrius Hines, and Robert Treadwell. (Cr. Doc. 56, at 232-79). At the time of Wheeler's trial, Will and Demetrius Hines were both serving ten year sentences for convictions on conspiracy to possess with intent to distribute large quantities of marijuana. (*Id.*, at 234, 239, 262-64). Will and Demetrius Hines testified that they asked Wheeler in late 2007 or early 2008 whether he could buy some extra marijuana from a Mexican supplier in Memphis, Tennessee. (*Id.*, at 240-41, 266). They stated that Wheeler took 300-350 pounds of marijuana from the Mexican supplier through the Hines brothers. (*Id.*, at 245, 266). They further recounted that when Wheeler failed to repay the Mexican supplier, Will Hines paid the Mexicans between $90,000 and $100,000 to "keep them off [Wheeler's] back." (*Id.*, at 248-49, 268). The court allowed this testimony for the purpose of showing intent, knowledge, and motive pursuant to Fed. R. Evid. 404(b). (*Id.*, at 231).[3]

---

[3] The court gave a limiting instruction to the jury stating that this testimony about Wheeler's prior acts could not be considered as "proof that he committed the acts he is charged with here before you today," but rather could only be considered for the limited purposes of "motive, intent, plan, knowledge, or lack of mistake or accident by Mr. Wheeler as to the allegations with which he is charged." (Cr. Doc. 56, at 242).

Will Hines, Demetrius Hines, and Robert Treadwell also testified to statements they claimed to have heard Wheeler make at the Morgan County jail. Each asserted that he had heard Wheeler say that he tried to come up with the money to buy two kilos of cocaine. (Cr. Doc. 56, at 251-52, 269-70, 278). Demetrius Hines testified that Wheeler said the Mexicans "didn't want to trust him like with the five, but he was going to try to come up with the money for two of them." (*Id.*, at 270). Robert Treadwell similarly testified that "they was going to let him get two kilos of cocaine for twenty-seven thousand dollars, . . . but he couldn't come up with that," and "[i]f they was going to trust him with the two kilos . . . he could come back and get the other three." (*Id.*, at 278).

After the government rested its case, Wheeler's attorney Bruce Gardner moved for a judgment of acquittal under Fed. R. Crim. P. 29. (Cr. Doc. 57, at 285). The court denied that motion. (*Id.* at 287).

Thereafter, Wheeler took the stand, despite the court's explanation that Wheeler had a constitutional right to remain silent and would put his credibility at issue by testifying. (Cr. Doc. 57, at 287-90). Wheeler testified that he was looking for an investor in his new business, and that Limon had introduced Lagunas to Wheeler as a potential investor. (*Id*. at 308-12). Wheeler asserted that Lagunas first brought up the sale of cocaine, but Wheeler responded that he did not sell drugs and was offended by Lagunas's suggestion. (*Id*. at 314-15). Wheeler stated that he never intended to buy the drugs, but instead just pretended to go along with the drug deal so that his friends could "gank" Lagunas. (*Id*. at 318). Wheeler explained that "[g]anking is when you set somebody up to meet you for drugs or something and you rob them." (*Id*. at 319). Wheeler stated that ultimately he decided not to go through with the ganking, but showed up at the

5

Holiday Inn with nearly $14,000 in the hopes that he could get out of the deal by having less than the full purchase price for two kilos of cocaine ($54,000). (*Id.* at 326-32). Wheeler's attorney did not renew his Rule 29 motion after all evidence had been presented.

A jury convicted Wheeler of one count of conspiracy to possess with intent to distribute five kilograms or more of cocaine, in violation of 21 U.S.C. § § 841(a)(1). (Cr. Doc. 57, at 402-03). The court sentenced Wheeler to 20 years imprisonment and 10 years of supervised release. (Cr. Doc. 72, at 2-3).

Wheeler appealed to the Eleventh Circuit, and the Court affirmed his conviction. *See United States v. Wheeler*, 443 F. App'x 403 (11th Cir. 2011). The Supreme Court denied Wheeler's petition for certiorari. *See Wheeler v. United States*, 132 S. Ct. 1780 (Mar. 19, 2012).

On July 13, 2012, Wheeler filed the instant Motion to Vacate, Set Aside, or Correct his Sentence pursuant to § 2255. (Cv. Doc. 1).[4] After preliminary review, the court ordered the government to show cause why the court should not grant Wheeler's motion. (Cv. Doc. 13). The government responded on February 14, 2013. (Cv. Doc. 18). On April 22, 2013, the court found the case ready for summary disposition and ordered Wheeler to submit any additional evidence within twenty days. (Cv. Doc. 20). Wheeler filed a reply to the government's response on May 16, 2013. (Cv. Doc. 22). Wheeler also requested discovery of specific information in support of his § 2255 claims. (Cv. Doc. 21). The government responded in opposition to this discovery request, and the court denied Wheeler's motion for discovery. (Cv. Docs. 27 & 28, respectively). Wheeler thereafter filed his "Last Word and Opposition to Summary Judgment," as well as four

---

[4] Wheeler initially filed his petition on a § 1983 model form. After reading Wheeler's motion, the court realized that Wheeler was actually seeking § 2255 relief. Wheeler filed an amended petition on a § 2255 model form on July 30, 2012. (Cv. Doc. 5).

other subsequent untitled filings. (Cv. Docs. 29, 30, 32, 34, & 36). Wheeler also filed an

"Addendum of Memorandum of Law 'New Ground' in Support of Petitioner's 2255 Motion,"

which the court did not consider because Wheeler filed this "new ground" over two years after

the court ordered Wheeler to submit his last word on his petition. (Cv. Doc. 37). This matter is

ripe for resolution.


**III. Analysis**

Wheeler asserts 27 grounds in support of his § 2255 motion. These grounds fall into three

principal categories. As discussed below, none of these grounds have merit. First, Wheeler

asserts claims based on parallel proceedings in state court. These claims are not cognizable under

28 U.S.C. § 2255. Next, Wheeler raises substantive claims of prosecutorial misconduct. These

claims are procedurally defaulted, so they do not provide any basis for relief. Finally, Wheeler

brings numerous ineffective assistance of counsel claims. These claims also lack merit because

Wheeler fails to demonstrate that his attorneys' actions were objectively unreasonable.

The government asserted in its response to Wheeler's petition that Wheeler also raised

the issue of the sufficiency of the evidence used to convict him. (Cv. Doc. 18, at 18). The court

does not find an insufficient evidence claim anywhere within Wheeler's 27 grounds.

Nevertheless, if somewhere within the hundreds of pages Wheeler has filed in support of his

§ 2255 motion, Wheeler has asserted a claim based on insufficient evidence, this claim lacks

merit. Wheeler raised this issue in his direct appeal, and the Court decided the matter against

him. *See United States v. Wheeler*, 443 F. App'x 403, 406 (11th Cir. 2011) ("We conclude that

there was sufficient evidence to support Wheeler's conviction."). The law has not changed since

the Eleventh Circuit's consideration of this issue. Consequently, no basis exists for the court to reconsider this issue now, if it lurks in Wheeler's petition.

### A.        Parallel Proceedings in State Court

In grounds 3(b-c) of his petition, Wheeler asserts claims based on state proceedings. Wheeler alleges that his state counsel John Mays, state D.A. Bob Burrell, and Assistant U.S. Attorney Mary Stuart Burrell engaged in various ethical violations. In support of ground 3, Wheeler attaches several documents from the District Court of Morgan County, Alabama.

Section 2255 allows "[a] prisoner in custody under sentence of a [federal] court" to challenge that *federal* sentence. 28 U.S.C. § 2255; *Daniels v. U.S.*, 532 U.S. 374, 377 (2001). Wheeler's claims based on actions taken in state court are not cognizable claims under § 2255. The conduct of Wheeler's state counsel or of the state D.A. in preliminary state proceedings had no bearing on the conviction and sentence that this court gave Wheeler. Accordingly, these claims do not provide Wheeler with a basis for relief from his federal conviction and sentence.

The court notes that the government disregarded grounds 1-3 of Wheeler's petition in their entirety. (Cv. Doc. 18, at 1). The government asserted that these claims involved "parallel proceedings in state court" and would not be addressed "since they are not cognizable under 28 U.S.C. § 2255." (*Id.*).

However, the court is not convinced that these claims refer solely to proceedings in state court. In grounds 1, 2, and 3(a), Wheeler alleges ineffective assistance of his *trial counsel*. Wheeler uses the term "trial counsel" to refer to his state attorney, John Mays, and his federal pre-trial and trial attorneys, Brian Clark and Bruce Gardner. To the extent that Wheeler was referring to his state court counsel, these claims would not provide a basis for relief. To the

extent, however, that Wheeler was referring to his federal trial attorneys, the court will address these grounds along with Wheeler's other ineffective assistance of counsel claims in subsection III(C) of this opinion.

Wheeler also raises prosecutorial misconduct claims in grounds 3(b) and 3(c) of his petition. In these grounds, Wheeler alleges that state D.A. Bob Burrell conducted himself improperly, but also asserts that Assistant U.S. Attorney Mary Stuart Burrell engaged in misconduct in obtaining Wheeler's federal indictment. (Cv. Doc. 5, at 14-15). Accordingly, to the extent that these grounds address actions taken in state court, the claims are not cognizable under § 2255. However, to the extent these grounds address prosecutorial misconduct in Wheeler's federal case, those claims will be addressed in the following section of this opinion.

### B.     Prosecutorial Misconduct Claims

Wheeler alleges that government agents and Assistant U.S. Attorney Mary Stuart Burrell engaged in various acts of prosecutorial misconduct, perjury, and evidence tampering during Wheeler's investigation and prosecution. These claims are found in grounds 3(b), 3(c), 4-8, 12-13, 17, 19, and 21-23 of Wheeler's petition. (Cv. Doc. 5).

Specifically, Wheeler alleges in ground 3(b) that Assistant U.S. Attorney Mary Stuart Burrell assisted in fraudulent conduct and obtained a forfeiture indictment based on a false arrest for trafficking cocaine by FBI agent Aaron Shoaf (Cv. Doc. 5, at 14); in ground 3(c) that Mary Stuart Burrell mislead the state court to believe that the prosecution had brought federal charges against Wheeler for the same offense as he was charged with in state court (*id.*, at 15); in ground 4 that again Mary Stuart Burrell, Aaron Shoaf, and Decatur police officer Jamie Jarrell falsely arrested Wheeler and then mislead the state court, leading to a fraudulent federal indictment (*id.*,

at 23); in ground 5 that Mary Stuart Burrell failed to disclose evidence regarding the unindicted

co-conspirator in Wheeler's case (*id.*, at 24); in ground 6 that Jamie Jarrell falsely testified at

Wheeler's trial and fabricated a story about Javier Limon being an FBI target and unindicted co-

conspirator (*id.*, at 25); in ground 7 that the government concealed that Javier Limon was actually

acting as a government informant (*id.*, at 26); in ground 8 that the government "coached and

enticed" Esteban Lagunas to provide false testimony at Wheeler's trial (*id*., at 27); in ground 12

that the government tampered with the audio tapes used against Wheeler (*id.*, at 33); in ground

13 that the government failed to disclose documents regarding its confidential informant and that

Decatur police officer Jamie Jarrell perjured himself at Wheeler's trial (*id.*, at 35-36); in ground

17 that Huntsville police officer Terry Lucas and the government's informant Esteban Lagunas

presented perjured testimony about Wheeler smelling and inspecting the cocaine shown to

Wheeler by undercover officer Lucas (*id.*, at 40); in ground 19 that Mary Stuart Burrell

improperly brought the more severe charge of conspiracy to possess five or more kilos of cocaine

against Wheeler, when the government informant only arranged to sell Wheeler two kilos (*id*., at

42); in ground 21 that Mary Stuart Burrell asked improper, leading questions of witnesses whose

testimony should not have been admitted under Fed. R. Evid. 404(b) (*id.*, at 44); in ground 22

that Mary Stuart Burrell knowingly presented fabricated jail house admissions (*id.*, at 45); and

finally, in ground 23 that Mary Stuart Burrell improperly implied in her closing argument that

Wheeler was responsible for 100 kilos of cocaine (*id.*, at 46).

  Each of these claims is unsubstantiated. Nonetheless, to the extent that Wheeler raises

claims with a meritorious basis, they still fail. The allegations that Wheeler now makes were

available to him either at trial or in his direct appeal. Wheeler could have, but did not, raise these

10

claims at either his trial or in his appeal. Consequently, these claims are procedurally defaulted.[5]

Generally, a defendant must raise an available issue "on direct appeal or else it will be considered procedurally barred in a § 2255 motion." *Mills v. United States*, 36 F.3d 1052, 1055 (11th Cir. 1994), *cert. denied*, 514 U.S. 1112 (1995). Wheeler's allegations of misconduct were available to him at the time of his appeal. Wheeler was aware of these alleged instances of "misconduct" and could have raised them in earlier proceedings. Wheeler has not uncovered any new evidence since that time, which would support new allegations of prosecutorial misconduct.

Wheeler may not now raise issues that he could have presented on appeal unless he can show either a valid *cause* for the failure to timely raise and pursue the claim at trial and on direct appeal AND resulting *prejudice;* OR *actual innocence* such that it would be a fundamental miscarriage of justice not to hear the claim. *See Bousley v. United States*, 523 U.S. 614, 622 (1998).

"'Actual innocence' means factual innocence, not mere legal insufficiency." *Bousley*, 523 U.S. at 623. Although Wheeler does not assert "actual innocence" in his initial or amended petitions, in later filings, he asserts his "legal and factual innocence." (*See*, *e.g.*, Cv. Doc. 34, at 1). The record, however, does not support a finding that Wheeler is actually innocent. Actual innocence presents a high bar. Actual innocence exists where the petitioner demonstrates "by clear and convincing evidence that but for a constitutional error, no reasonable juror would have found the petitioner [guilty]." *Schlup v. Delo*, 513 U.S. 298, 301 (1995) (*quoting Sawyer v. Whitley*, 505 U.S. 333, 336 (1992)).

---

[5] Because these claims are procedurally barred, the court does not reach the merits of Wheeler's far-fetched claims of "misconduct."

The court finds that Wheeler was not "actually innocent." As the Eleventh Circuit noted, "there was ample evidence that Wheeler knowingly and voluntarily participated in the charged conspiracy." *United States v. Wheeler*, 443 F. App'x 403, 406 (11th Cir. 2011). Reasonable jurors could have found that, based on this ample evidence, Wheeler was guilty. Therefore, Wheeler is unable to overcome procedural defaults because of his actual innocence.

Wheeler also cannot overcome procedural default by showing cause and prejudice. To establish "cause," Wheeler must show "that some objective factor external to the defense prevented [Wheeler] or his counsel from raising his claims on direct appeal." *Lynn v. United States*, 365 F.3d 1225, 1235 (11th Cir. 2004), *cert. denied*, 543 U.S. 891 (2004). "Prejudice" means "a reasonable probability that the result of the proceeding would have been different." *Spencer v. Sec'y, Dept. of Corr.*, 609 F.3d 1170, 1180 (11th Cir. 2010), *cert denied*, 562 U.S. 1203 (2011).

Attorney error can constitute cause and prejudice excusing a default, but only if the error itself rises to the level of ineffective assistance of counsel in violation of the Sixth Amendment. *See Murray v. Carrier*, 477 U.S. 478 (1986) (explaining that a defendant cannot overcome a procedural default if "defendant is represented by counsel whose performance is not constitutionally ineffective under the standard established in *Strickland v. Washington*").

In the instant case, Wheeler cannot rely on his attorneys' failure to raise prosecutorial misconduct as a basis for excusing his default. The court finds that neither Wheeler's trial nor appellate counsel was ineffective for failing to raise claims of prosecutorial misconduct. As discussed in subsection III(C) of this opinion, Wheeler's attorneys acted reasonably in failing to assert claims with no factual basis. Thus, ineffective assistance of counsel does not excuse

Wheeler's procedural default. Wheeler does not point to any other external factors that would have prevented him from raising these claims at trial or in his direct appeal. Accordingly, Wheeler cannot demonstrate cause, and his claims are procedurally defaulted.

Moreover, because Wheeler did not object to these issues either at trial or raise them on appeal, they are not just procedurally defaulted, but rather are *double procedurally defaulted*. *See Reece v. United States*, 119 F.3d 1462, 1467 n.9 (11th Cir. 1997) ("A 'double procedural default' occurs when . . . the defendant neither objects in the trial court nor on direct appeal.").

### C.    Ineffective Assistance of Counsel

Wheeler's claims for ineffective assistance of counsel are interspersed throughout his petition. Wheeler alleges ineffective assistance of his trial counsel in grounds 1-4, 6, 9-18, 20-21, 23-24, and 26-27. Wheeler also alleges ineffective assistance of his sentencing counsel in ground 12 and ineffective assistance of his appellate counsel in ground 25. The court finds each of these claims to be meritless.

The Sixth Amendment gives criminal defendants the right to effective assistance of counsel. U.S. Const. amend. VI; *see also Strickland v. Washington*, 466 U.S. 668, 684 (1984) ("[T]his court has recognized that the Sixth Amendment right to counsel exists, and is needed, in order to protect the fundamental right to a fair trial."). To prevail on a claim of ineffective assistance of counsel, Wheeler must demonstrate both incompetence and prejudice. First, Wheeler must show that his counsel's performance fell below an objective standard of reasonableness. Next, Wheeler must show that he suffered prejudice as a result of that deficient performance. *See id.* at 684-91.

Deficient performance exists when counsel acts "outside the wide range of professionally

13

competent assistance." *Strickland*, 466 U.S. at 690. This standard does not require counsel to do "what the best lawyers would have done. Nor is the test even what most good lawyers would have done." *Waters v. Thomas*, 46 F.3d 1506, 1512 (11th Cir. 1995) (en banc). The only question is "whether some reasonable lawyer at the trial could have acted, in the circumstances, as defense counsel acted at trial." *Id.* Counsel is presumed to have acted reasonably. *Strickland*, 466 U.S. at 690. To prove unreasonableness, "a petitioner must establish that *no competent counsel* would have taken the actions that his counsel did take." *Chandler v. United States*, 218 F.3d 1305, 1316 (11th Cir. 2000).

The court may find prejudice if "a reasonable probability [exists] that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. Wheeler must show more than "that the error had some conceivable effect on the outcome of the proceeding." *Id.* at 693. Rather, he must show that "absent the errors, the factfinder would have had a reasonable doubt respecting guilt." *Id.*

Wheeler's claims for ineffective assistance of counsel do not meet these standards. Nothing in the record indicates that Wheeler's attorneys failed to act as reasonable attorneys under the circumstances.

Wheeler argues that his attorneys were ineffective for many different reasons. Wheeler's challenges to his trial attorney's performance can be grouped into a few discrete categories: (1) failure to communicate; (2) failure to inspect the government's tapes and transcripts; (3) failure to verify Spanish-speaking witnesses' testimony; and (4) failure to take specific strategic actions at or in preparation for trial. Wheeler also separately challenges the effectiveness of his sentencing counsel and appellate counsel.

14

1.      Trial Counsel's Failure to Communicate

Several of the grounds Wheeler asserts rest on what Wheeler contends was a failure of his trial counsel to adequately communicate with him. In grounds 1, 4, 18, and 24 of his petition, Wheeler asserts that his trial counsel was ineffective because he failed to respond to any of Wheeler's letters or to adequately prepare for trial. (Cv. Doc. 5, at 10, 23, 41, 47). In grounds 1, 18, and 24, Wheeler further asserts that his trial counsel did not communicate or meet with Wheeler until four months after he was appointed as Wheeler's lawyer, when only days were left before Wheeler's trial. (*Id.* at 10, 41, 47).

Wheeler asserts these claims against his "trial counsel," without specifying whether he is referring to Brian Clark,  who represented Wheeler in pre-trial proceedings and withdrew with the court's permission before Wheeler's trial (*see* Cr. Doc. 23), or Bruce Gardner, who actually represented Wheeler at trial. In later filings, Wheeler refers to both Brian Clark and Gardner as his "appointed trial attorneys." (*See, e.g.*, Cv. Doc. 22, at 5).

Accordingly, the court will construe Wheeler's petition liberally and will consider whether either Brian Clark or Bruce Gardner's failure to communicate could constitute a meritorious ineffective assistance of counsel claim.[6]

---

[6]Wheeler asserts claims against his unnamed trial counsel throughout his petition. The court finds that the claims asserting a failure to adequately communicate could reasonably apply to either Brian Clark, who represented Wheeler in pre-trial proceedings, or Bruce Gardner, who represented Wheeler at trial. The remaining three categories of Wheeler's ineffective assistance of counsel claims–failure to inspect the tapes, failure to verify Spanish-speaking witnesses' testimony, and failure to take strategic trial actions–could apply only to Bruce Gardner because they relate to acts or omissions taken at or in preparation for Wheeler's trial. Thus, the court construes the failure to communicate claims as applying to both Clark and Gardner, but finds that the remainder of Wheeler's claims against his trial counsel apply only to Gardner.

a.  *Brian Clark*

Wheeler alleges that Clark, who "withdrew 5 days before scheduled jury trial due to ineffective assistance of counsel allegations" provided ineffective counsel because he "failed to file any motions in petitioner's case as to any effort or attempt to prepare" for Wheeler's trial. (Cv. Doc. 22, at 5).

The court does not have a statement by Brian Clark to consider in response to Wheeler's allegations. Nonetheless, in looking at Wheeler's criminal docket, the court notes that Wheeler was indicted on federal charges on July 1, 2009. (Cr. Doc. 1). Shortly thereafter, on July 10, 2009, the court appointed Brian Clark as Wheeler's counsel. On this same day, the Magistrate Judge entered the court's Standing Discovery Order, which required the government to disclose and make available for inspection evidence within its control. (Cr. Doc. 4). This Order eliminated the need for Clark to file pre-trial motions requesting discoverable information known to the government. Clark made an initial appearance on Wheeler's behalf on July 14, 2009. A month later, on August 20, 2009, Clark filed two motions on Wheeler's behalf: a Motion to Continue (Cr. Doc. 11), and a Motion to Substitute Attorney, filed at Wheeler's insistence. (Cr. Doc. 12). Magistrate Judge Davis held an ex parte hearing with Wheeler on August 25, 2009, to give Wheeler the opportunity to explain why he wanted new counsel. (Cr. Doc. 13). The court considered Wheeler's grievances and denied Wheeler's motion to substitute counsel, finding no justifiable reason to replace Clark. (*Id.*).

The court scheduled Wheeler's trial for October 20, 2009. (Cr. Doc. 16). In the months leading up to Wheeler's trial, Wheeler continued to disagree with Brian Clark, and filed several "pro se" motions seeking to dismiss Brian Clark as his attorney or to allow Wheeler to proceed

pro se. (*See* Motion for Permission to File Pro Se Pleadings, Cr. Doc. 17; Motion to Dismiss Counsel of Record, Cr. Doc. 18). In light of the increasingly deteriorating relationship between Clark and Wheeler, Magistrate Judge Davis granted Brian Clark's Motion to Withdraw on October 14th, 2009. (Cr. Docs. 22 & 23).

On October 15, 2009, the court rescheduled Wheeler's trial for December 7, 2009, and appointed Bruce Gardner as Wheeler's counsel. (Cr. Doc. 23). Gardner subsequently filed a motion to continue the trial. (Cr. Doc. 25). The court granted this motion and continued Wheeler's trial for February 22, 2010. (Cr. Doc. 27).

The court finds the Brian Clark acted competently in his representation of Wheeler. Although Wheeler and Clark seemed to disagree throughout their entire relationship, the Magistrate Judge did not find any justifiable reason for removing Clark as counsel, and refused to do so until the adversarial relationship between Clark and Wheeler progressed to such a point that it hindered Clark's ability to represent Wheeler.

Nonetheless, even if Clark did act unreasonably in his representation of Wheeler and should have communicated with Wheeler more regularly or should have filed more pre-trial motions, Wheeler has failed to demonstrate how Clark's actions prejudiced him. Because of Wheeler's repeated requests, Clark withdrew as counsel only days before Wheeler's trial was originally scheduled. This withdrawal, however, did not prejudice Wheeler because the court rescheduled Wheeler's trial twice. These continuances gave Wheeler's new counsel, Bruce Gardner, over four months to adequately prepare for Wheeler's trial. Thus, Wheeler's ineffective assistance of counsel claims against Brian Clark are without merit.

b.   *Bruce Gardner*

To the extent Wheeler's failure to communicate claims are directed at his trial counsel, Bruce Gardner, these claims also lack merit. Gardner asserts that he thoroughly communicated with Wheeler in the course of his representation. In an affidavit submitted along with the government's response to Wheeler's petition, Gardner states:

> I had full access to the discovery and reviewed each item with Mr. Wheeler in detail. Mr. Wheeler's prior counsel, Brian Clark, also reviewed all the discovery materials with him in preparation for the trial. . . . I thoroughly discussed the strategy of trial with Mr. Wheeler. . . . I reviewed the entire case with Mr. Wheeler.

(Cv. Doc. 18-1). Nothing in the record supports Wheeler's version of the events. Therefore, his unsubstantiated claims based on a failure to communicate lack merit.

However, even if Gardner should have communicated with Wheeler more often, these claims still fail because Wheeler is unable to demonstrate how Gardner's failure to communicate prejudiced him. Wheeler cannot show that "absent the errors, the factfinder would have had a reasonable doubt respecting guilt." *Strickland*, 466 U.S. at 694. The Eleventh Circuit acknowledged in Wheeler's appeal that "ample evidence" existed from which a jury could find Wheeler guilty. *United States v. Wheeler*, 443 F. App'x at 406. Wheeler fails to demonstrate how greater communication with his attorney would have rebutted the government's ample evidence or altered the outcome of his trial. Accordingly, Wheeler's ineffective assistance of counsel claims based on a failure to communicate do not provide Wheeler with any basis for relief.

2.   Trial Counsel's Failure to Inspect Tapes and Transcripts

In grounds 6, 12, and 17 of his petition, Wheeler argues that his counsel should have reviewed government audio tapes and transcripts that Wheeler believed were edited or altered.

18

(Cv. Doc. 5, at 25, 34, 40). These claims are meritless because they are unsupported and fail to

show that Wheeler's counsel acted unreasonably.

To overcome the presumption that his counsel acted reasonably, Wheeler "must identify

the acts or omissions of counsel that are alleged not to have been the result of reasonable

professional judgment." *Strickland*, 466 U.S. at 690.  Conclusory or unsupported allegations

cannot support an ineffective assistance of counsel claim. *See Tejada v. Dugger*, 941 F.2d 1151,

1559 (11th Cir. 1991) (finding "unsupported allegations, conclusory in nature and lacking factual

substantiation" to be an insufficient basis for relief); *see also Chandler*, 218 F.3d at 1314 n. 15

("An ambiguous or silent record is not sufficient to disprove the strong and continuing

[*Strickland*] presumption."). Furthermore, "where the record is incomplete or unclear about

[counsel]'s actions, we will presume that he did what he should have done, and that he exercised

reasonable professional judgment." *Williams v. Head*, 185 F.3d 1223, 1228 (11th Cir. 1999).

Wheeler's trial counsel Bruce Gardner stated that he "had full access to the discovery and

reviewed each item with Mr. Wheeler in detail." (Cv. Doc. 18-1). The government laid a proper

foundation for the tapes and transcripts when it introduced them into evidence at trial. (*See*, *e.g.*,

Cr. Doc. 55, at 45-47). Nothing in the record suggests that the audio files were improperly altered

or edited by the government or that Wheeler's counsel had in fact failed to review the tapes.

Wheeler's assertions do not show that Gardner failed to act as a reasonable attorney would act

under these circumstances. Therefore, these grounds are without merit.

Nonetheless, even if Gardner's performance were deficient, Wheeler's assertions would

still not demonstrate that Wheeler was prejudiced by his lawyer's failure to review the tapes. If

Gardner had reviewed the tapes in greater detail, he likely would not have found any improper

edits or alterations. And even if altered tapes were found and presented as a ground to exclude

them, this finding most likely would not have had any impact on the outcome of Wheeler's trial.

The government also presented many other forms of evidence against Wheeler, including

the testimony of its confidential informant Esteban Lagunas, the testimony of an undercover

police officer, the testimony of the FBI agents who investigated and arrested Wheeler, an aerial

surveillance video of Wheeler driving to and from the Holiday Inn in the hours leading up to his

arrest, and two videos taken from the ground on the day of Wheeler's arrest by FBI agent Brian

Oakley. Sufficient evidence existed for a jury to find Wheeler guilty, even without reliance on the

audiotape evidence. *See United States v. Wheeler*, 443 F. App'x at 406 ("Here, there was ample

evidence that Wheeler knowingly and voluntarily participated in the charged conspiracy.").

3.      Trial Counsel's Failure to Verify Spanish-Speaking Witnesses' Testimony

Wheeler bases some of his ineffective assistance of counsel claims on the testimony

presented in Spanish at Wheeler's trial. In ground 9 of his petition, Wheeler alleges that his

counsel was ineffective because he did not have a Spanish-speaking juror[7] or person for the

defense to verify the accuracy of Esteban Lagunas, who testified in Spanish through a

government-hired interpreter. (Cv. Doc. 5, at 29). In ground 10, Wheeler similarly alleges that his

trial counsel did not adequately cross-examine the three FBI employees who testified as to the

accuracy of the Spanish conversations in the tape transcripts. (*Id.* at 30).

No basis exists for questioning the accuracy of the government-hired interpreter's

testimony. Under 28 U.S.C. § 1827, interpreters must be certified or otherwise qualified before

---

[7] Wheeler's attorney would not have had any way to place a Spanish-speaking person on the jury, even if he had so desired.

they may act as interpreters in judicial proceedings. Moreover, the interpreter used at Wheeler's

trial was sworn in and interpreted Lagunas's testimony under oath. (Cr. Doc. 55, at 94).

Wheeler's lawyer had no evidence suggesting that the government and the interpreter conspired

to deceive the jury by misinterpreting testimony. Therefore, Gardner acted reasonably in failing

to object to the use of the interpreter and in failing to hire a separate defense interpreter to verify

the translation provided by the government-hired interpreter.

Similarly, Gardner had no reason to question in greater detail the bilingual FBI agents

who testified under oath as to the accuracy of the Spanish conversations on the tape transcripts.

These agents each testified that they worked as linguists for the FBI. (Cr. Doc. 55, at 78-93).

They explained that their job as linguists is to translate recordings from Spanish into English.

Additionally, they explained that the FBI has quality control measures in place, by which every

translation is reviewed both by a peer and by an anonymous linguist. Each of the linguists further

testified that the quality control processes were followed in the translation of the tapes used

against Wheeler and that the transcripts presented at Wheeler's trial were true and accurate

copies of the audiotapes they had translated. (*Id.*).

Gardner briefly cross-examined the first FBI linguist witness (Cr. Doc. 55, at 85-86), but

did not cross-examine the following two FBI agents. Gardner's failure to cross-examine these

witnesses was a reasonable choice. Because of the thorough foundation laid by the government

and the linguists' explanations about the quality control processes, Gardner could have

reasonably concluded that no further questioning was necessary. Consequently, Wheeler's

assertions related to the testimony presented in Spanish at his trial are unfounded.

Nonetheless, as previously discussed, even if Wheeler's counsel was unreasonable in

failing to verify the testimony presented through the Spanish-speaking interpreter or in failing to question the testimony of the FBI agents who translated the audiotapes presented at trial, these claims would still fail because Wheeler has not demonstrated that he was prejudiced by his lawyer's actions. If Wheeler's attorney had brought in a Spanish interpreter, the interpreter most likely would not have translated the testimony differently in any material way. And even if minor differences existed between the testimony as translated by the government-hired interpreter and witnesses and the testimony translated by a defense interpreter, these differences most likely would not have impacted the outcome of Wheeler's trial. Still, the government presented ample evidence at Wheeler's trial from which the jury could reasonably have found that Wheeler was guilty.

4.      Trial Counsel's Failure to Take Specific Strategic Trial Actions

The remainder of Wheeler's claims asserted against his trial counsel deal with strategic choices his attorney made in defending Wheeler.

To prove ineffective assistance of counsel, Wheeler must overcome the presumption that his lawyer's actions "might be considered sound trial strategy." *Strickland*, 466 U.S. at 689. "[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." *Id.* at 690-91.

Counsel is not required to present every possible defense or argument. *See Chandler*, 218 F.3d at 1319 ("Good advocacy requires 'winnowing out' some arguments, witnesses, evidence, and so on, to stress others."). Furthermore, if counsel has "reason to believe that pursuing certain

investigations would be fruitless or even harmful, counsel's failure to pursue those investigations may not later be challenged as unreasonable." *Strickland*, 466 U.S. at 691.

a.     *Admission of or Objection to Specific Pieces of Evidence*

Wheeler argues in numerous instances that his trial counsel should have introduced or objected to a specific piece of evidence. For example, in ground 2 of his petition, Wheeler asserts that his trial counsel should have introduced evidence of what Wheeler contends was a false arrest and police misconduct. (Cv. Doc. 5, at 12). Wheeler also argues that his trial counsel should have objected to the admission of numerous pieces of evidence at his trial, including out-of-court recorded statements that Wheeler contends violated his right of confrontation (*id.* at 11); evidence that Wheeler contends was seized in violation of the Fourth Amendment (*id.*, at 13); the prejudicial evidence of a picture of 10 kilos of cocaine (*id.*, at 39);  a "404(b) motion" filed by the government after the pre-trial deadline (*id.*, at 43); Mary Stuart Burrell's allegedly improper questioning of witnesses whose testimony Wheeler contends was inadmissible under 404(b) (*id.*, at 44); and the U.S. Attorney's suggestions in her closing statement that Wheeler was responsible for 100 kilos of cocaine (*id.*, at 46).

Wheeler's trial counsel Bruce Gardner provided reasonably competent representation. Gardner did not have to take every action that Wheeler suggested he should. Rather, he only had to take reasonable, strategic actions, which he believed would provide a good defense for Wheeler. While Wheeler wanted his attorney to pursue certain tactics, Gardner–as demonstrated by his affidavit–believed that those pursuits were meritless or that another course of action would be more successful. Consequently, his actions were reasonable, strategic choices.

In his affidavit, Bruce Gardner says that he tried to advise Wheeler about the trial strategy

23

that he believed would be the most successful, but that Wheeler often went against his advice. Gardner explained that Wheeler ignored the opportunity to settle for a ten-year sentence and instead chose to personally testify at trial, against Gardner's advice. (Cv. Doc. 18-1). Gardner further stated:

> I thoroughly discussed the strategy of trial with Mr. Wheeler. He told me his version of the events which led to his arrest. I advised Mr. Wheeler that his theory of defense was not believable, and that he would be convicted at trial. Mr. Wheeler insisted on testifying at his trial, again against my advice.

(*Id.*).

Gardner was not required to pursue meritless arguments suggested by Wheeler. Gardner did not have to introduce evidence of an alleged false arrest and police misconduct, as Wheeler stated that he should have done in ground 2 of his petition.

Gardner also was not required to object to each piece of evidence that Wheeler suggested he should have. The fact that Gardner failed to make objections to the things Wheeler suggested does not mean that he was incompetent. In each of these instances, Gardner was free to exercise his legal judgment and refrain from objecting to the evidence. These decisions were strategic trial choices made by Gardner. *See, e.g., Julius v. Johnson*, 840 F.2d 1533, 1539 (11th Cir. 1988) ("Counsel's failure to object to the prosecutor's comments during closing argument was a deliberate tactical choice" that did not rise to the level of ineffective assistance of counsel.). Gardner investigated the law and the facts relevant to Wheeler's case and appropriately determined that an objection was not necessary in these situations based upon his legal training and experience.

Furthermore, Wheeler's choice to testify at trial must be considered when evaluating the

reasonableness of Gardner's actions. Wheeler's testimony limited his counsel's ability to take strategic actions. *See Strickland*, 466 U.S. at 691 ("The reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions.").

Despite both Gardner's advice to Wheeler that his defense theory was not believeable and the court's explanations about the risks and consequences of testifying, Wheeler took the stand and testified about the plan to "gank" Lagunas. The jury heard Wheeler's story and "was free to discredit his testimony as substantive evidence of his guilt." *United States v. Wheeler*, 443 F. App'x at 407; *see also United States v. McDowell*, 250 F.3d 1354, 1367 (11th Cir. 2001) ("We have recognized that a statement by a defendant, if disbelieved by the jury, may be considered as substantive evidence of the defendant's guilt."); *United States v. Allison*, 908 F.2d 1531, 1535 (11th Cir. 1990) ("The jury may view [a] defendant's false explanatory statement as substantive evidence proving guilt."). Because Wheeler insisted on testifying, Gardner was limited in the actions he could take. Gardner could only pursue actions at trial that would be consistent with the narrative presented by Wheeler.

Nonetheless, even if Gardner acted unreasonably in failing to object to these pieces of evidence, Wheeler was not prejudiced by the lack of objections. Wheeler is unable to establish a reasonable probability that "but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 693-94. The Eleventh Circuit found that "ample evidence" existed to convict Wheeler of the charged conspiracy. *United States v. Wheeler*, 443 F. App'x at 406. Therefore, even if Gardner had successfully objected to the evidence as Wheeler suggested, these objections would not have altered the outcome of Wheeler's trial. *See, e.g., Insignares v. Sec'y, Fla. Dept. of Corr.*, 755 F.3d 1273, 1284 (11th Cir.

2014) ("[A]n objection to this single statement during the prosecutor's closing argument is not reasonably likely to have changed the outcome."). A significant amount of other evidence existed from which the jury could still find Wheeler guilty.

Regarding the "404(b) motion" that Wheeler contends his attorney should have objected to because it was untimely, the government explained why the notice was filed at the last minute. On Friday, February 19, 2010–three days before trial was set to begin–, Assistant U.S. Attorney Mary Stuart Burrell filed a notice telling the court that she planned to introduce witnesses, Will and Demetrius Hines, who would testify for 404(b) purposes. Burrell explained that she had previously listed these witnesses for purposes of testifying as to Wheeler's jailhouse admissions, but when she visited the Hines brothers on the Thursday before the trial, she learned that these witnesses also knew of Wheeler's prior acts of selling marijuana. (Cr. Doc. 56, at 222-27). Gardner acknowledged that Burrell timely relayed this information to him after she had discovered it. (*Id*., at 228). Accordingly, he did not object to the evidence on timeliness grounds, but rather objected to its admissibility under the Federal Rules of Evidence, as discussed below. (*Id*.). This choice was a reasonable, strategic decision.

As to the actual evidence admitted under Fed. R. Evid. 404(b)–the testimony from Will Hines and Demetrius Hines regarding Wheeler's prior acts in selling marijuana–, Gardner did object to this evidence at trial. Gardner argued that the prejudicial effect of the testimony outweighed its probative value and that the evidence was being used to prove identity, which was not at issue in this case. (Cr. Doc. 56, at 228). The court admitted the evidence with a limiting instruction that it could only be considered to show intent, plan, knowledge, or lack of mistake or accident by Wheeler. (*Id.*, at 231, 242).

26

Additionally, the Eleventh Circuit found that this court did not abuse its discretion in admitting this evidence because Wheeler made his intent a material issue by pleading not guilty, and because the unfair prejudice did not outweigh the probative value of the evidence. *United States v. Wheeler*, 443 F. App'x at 405. Furthermore, the Eleventh Circuit found that even if this court did err in admitting this evidence, the error was harmless because of the "overwhelming evidence of Wheeler's guilt." *Id.* at 405 n 1.

On direct examination of these "404(b) witnesses," Gardner objected to testimony when he believed it exceeded the scope of what was allowed under Fed. R. Evid. 404(b). (*See* Cr. Doc. 56, at 241 ("I am going to object to that, that is in the nature of something that has not been disclosed under 404(b).")). Gardner's objections show that he acted reasonably in responding to this evidence.

Nonetheless, even if Gardner should have further objected to Mary Stuart Burrell's "leading questions to 404(b) witnesses . . . of irrelevant testimony" as Wheeler alleges (Cv. Doc.5, at 44), this claim still fails because Gardner's failure to object did not prejudice Wheeler. An objection to this questioning would not have affected the outcome of Wheeler's trial in light of the "overwhelming evidence" of his guilt.

The same logic applies to each of the other objections suggested by Wheeler. A successful objection would have been unlikely to alter the outcome of Wheeler's trial in light of the amount of evidence that was offered against him. Thus, Wheeler cannot demonstrate prejudice.

  b.  *Other Non-Evidentiary Trial Decisions*

Wheeler also alleges ineffective assistance of counsel based on a number of other

strategic trial decisions. These assertions are found in ground 18, in which Wheeler says his trial counsel should have used an entrapment defense (Cv. Doc. 5, at 41); ground 24, in which Wheeler says that his trial counsel should have interviewed a list of witnesses that Wheeler had identified (*id.*, at 47); ground 26, in which Wheeler argues that his counsel should have focused on different points in his closing argument (*id.*, at 51); and ground 27, in which Wheeler argues that his trial counsel should have moved for a Rule 29 Judgment of Acquittal after all evidence was presented in his trial (*id.*, at 1). Each of these claims hinges on a reasonable, strategic choice made by Wheeler's trial counsel. Accordingly, these claims do not provide a basis for relief.

What theory of defense to pursue at trial is a strategic decision. To be reasonable, counsel must make an informed decision; however, "no absolute duty exists to investigate a particular line of defense. Counsel's decision not to conduct an investigation need only be reasonable." *Williamson v. Moore*, 221 F.3d 1177, 1180 (11th Cir. 2000). Gardner reasonably concluded that the evidence did not support an entrapment defense. Therefore, he acted competently in not pursuing that defense. Moreover, this choice did not prejudice Wheeler because an entrapment defense would have done little to rebut the overwhelming evidence of Wheeler's guilt.

How to use and examine witnesses at trial is also a strategic decision, and failure to call particular witnesses does not constitute ineffective assistance. *See Fuqua v. Sec'y, Dep't of Corr.*, 409 F. App'x 243, 245 (11th Cir. 2010) (finding that "counsel's decision not to call [a witness] was a strategic decision and not deficient performance"); *see also Strickland*, 466 U.S. at 689 ("Even the best criminal defense attorneys would not defend a particular client in the same way."). Further, even a failure to *interview* a potential witness is not *per se* prejudicial. *See Sullivan v. DeLoach*, 459 F.3d 1097, 1109 (11th Cir. 2006) (holding that attorney's failure to

interview murder eyewitness did not create prejudice under *Strickland* because witness's testimony likely would not have changed the outcome at trial).

Gardner's failure to interview the witnesses identified by Wheeler was not unreasonable. This choice was a strategic decision within the purview of Wheeler's trial counsel. Furthermore, it did not prejudice Wheeler. In light of the vast amount of evidence against Wheeler, interviewing the witnesses Wheeler identified still would not have been likely to change the outcome of his trial.

The decision about which points to address in his closing argument was also a strategic decision made by Bruce Gardner. Gardner considered the arguments available to him and made those arguments that he believed would be the most persuasive. Wheeler contends that Gardner was ineffective because, in his closing argument, Gardner "talked of his father's death not key issues in movant's favor." (Cv. Doc. 5, at 51). Gardner did discuss his father's death in his closing statement; however, this discussion was related to Wheeler's defense. In discussing his father's death, Gardner was addressing the "beyond a reasonable doubt" standard. Gardner used the analogy of taking his father off life support to explain how sure the jurors should be about their verdict before they took Wheeler off of his metaphorical life support. (Cr. Doc. 57, at 389-91). This analogy was a reasonable way for Gardner to structure his closing argument.

However, even if Gardner did not act reasonably, this error would not show that Wheeler suffered any prejudice. *See Allen v. Lawhorn*, 562 U.S. 1118, 131 S. Ct. 562, 564 (2010) (finding that failure to give closing argument at all was not per se prejudicial where "closing argument by defense counsel would have had little impact."). If Gardner had focused on different points in his closing argument, it would have had little impact on the overall outcome of Wheeler's case.

The court finds that Gardner's failure to renew the Rule 29 motion for judgment of acquittal was also a reasonable, strategic decision. Gardner moved for a judgment of acquittal after the government rested, but failed to renew this motion after the defense had presented its case. The court denied Gardner's original Rule 29 motion. If Gardner believed that a renewed Rule 29 motion was meritless and would still be denied after the defense's case, he was not obligated to renew this motion. Indeed, Wheeler's own implausible testimony, given against the advice of Gardner, ensured that this court would not have granted a renewed Rule 29 motion.

Gardner's reasonableness notwithstanding, this action did not prejudice Wheeler. On appeal, the Eleventh Circuit considered whether it was error for the district court to deny Wheeler's Rule 29 motion. The Court concluded that it was not error because "there was sufficient evidence to support Wheeler's conviction." *United States v. Wheeler*, 443 F. App'x at 407. Thus, even if Gardner had renewed the motion, it would likely not have impacted the outcome of Wheeler's trial. Based on the evidence, the court would have denied Wheeler's Rule 29 motion again, and the jury would still have found Wheeler guilty. Again, Wheeler is unable to show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.

c. *Other Pre-trial Decisions*

Wheeler also challenges some of the actions taken by his trial counsel in the pre-trial stages of his case. In ground 13 of his petition, Wheeler asserts that his trial counsel should have possessed or requested favorable impeachment evidence to challenge the credibility of the government's key witness. (Cv. Doc. 5, at 35). In ground 14, Wheeler alleges that his trial counsel was ineffective because he did not "request any discoverable material known to

government unknown to defense." (*Id.*, at 37). In ground 15, Wheeler alleges that his trial

counsel should have objected to the government's "shifting nature of [the] case." (*Id.*, at 38).

Wheeler's claims in grounds 13 and 14 fail because this evidence was covered by the

Standing Discovery Order. (Cr. Doc. 4). In ground 13 of his petition, Wheeler asserts that his

trial counsel should have possessed or requested impeachment evidence for the government's key

witness, Esteban Lagunas. (Cv. Doc. 5, at 35). Wheeler contends that the government failed to

disclose a number of documents regarding this informant. (*Id.*). These allegations, however, are

meritless because the government was already required by the Standing Discovery Order to turn

over these documents. An additional motion from the defense requesting this evidence would

have been duplicative and unnecessary.

Furthermore, Wheeler's attorney cross-examined the government witnesses about

Lagunas's potential bias. Gardner questioned Decatur police officer Jamie Jarrell about

Lagunas's status as an illegal alien, his involvement with the police department as an informant,

and his arrangement with the government to provide help with Lagunas's citizenship status in

exchange for his assistance as a confidential informant. (Cr. Doc. 55, at 62-65). Gardner also

cross-examined Lagunas about his own bias and interest in working with the police. Gardner

asked Lagunas about his illegal entry into the country, his problems with obtaining custody of his

brother's children because he was an illegal alien, his purpose in approaching the Decatur Police

Department, his agreement with the Decatur Police Department to help him remain in the country

legally in exchange for his work as an informant, and the payments he received for his work as an

informant. (Cr. Doc. 56, at 144-54, 164-65). Gardner's questioning was a reasonable method of

challenging Esteban Lagunas's credibility. Gardner acted strategically to attack Lagunas's

31

credibility and had no reason to request any further impeachment evidence. Accordingly, this supposedly undiscovered impeachment evidence does not provide a basis for relief.

Similarly, Wheeler's assertions in ground 14 of his petition do not provide a basis for relief. In this ground, Wheeler alleges that his trial counsel was ineffective because he did not "request any discoverable material known to government unknown to defense" regarding an alleged, unindicted co-conspirator of Wheeler's. (Cv. Doc. 5, at 37). Again, this ground is without merit because this evidence would have been covered by the court's Standing Discovery Order.

Wheeler also alleges that his trial counsel should have objected to the government's "shifting nature of case and involvement of alleged unindicted co-conspirator." (Cv. Doc. 5, at 38). In this ground, Wheeler challenges the fact that he was charged with conspiracy while his alleged co-conspirators were not. These indictments or lack of indictments would not have provided a basis for Wheeler's attorney to object because these are matters of prosecutorial discretion. *See United States v. Armstrong*, 517 U.S. 456, 464 (1996) ("The Attorney General and United States Attorney retain 'broad discretion' to enforce the Nation's criminal laws."); *Bordenkircher v. Hayes,* 424 U.S. 357, 364 (1978) ("[T]he decision whether or not to prosecute, and what charge to file or bring before a grand jury, generally rests entirely in [the prosecutor's] discretion."). Wheeler's attorney was reasonable for failing to object to matters within the prosecutor's discretion.

Additionally, to the extent that Wheeler is challenging the government's inconsistencies in asserting who the second person was that was involved in the conspiracy with Wheeler, Wheeler's attorney brought these inconsistencies to the jury's attention at trial. In his opening

statement, Bruce Gardner asked the jury to question "exactly who is my client, who is George Wheeler conspiring with? Who? A police informant? Mr. Limon? Others? Who? Be really fuzzy about that." (Cr. Doc. 55, at 29). The jury heard these questions and still found the evidence sufficient to support a conspiracy conviction. Gardner also requested, and the court included, in the jury charges an instruction that "it takes at least two people to be in a conspiracy, one of whom cannot be a government agent." (Cr. Doc. 56, at 280-81; Cr. Doc. 57, at 284).

Gardner's actions at trial show that he responded reasonably to the government's allegedly "shifting nature of the case." Therefore, this claim also lacks merit.

5.     Claims against Sentencing Counsel

In ground 12 of his § 2255 motion, Wheeler argues that his sentencing attorney, Kevin Roberts, also provided ineffective assistance of counsel. Wheeler contends that Roberts provided ineffective counsel because he failed to "review and investigate evidence and issues that would reveal movant's constitutional rights [were] substantially violated." (Cv. Doc. 5, at 33). Wheeler's chief concerns with his sentencing counsel seem to be that Roberts did not allow Wheeler to adequately review the audio tapes and transcripts used against Wheeler at trial. Wheeler contends that he reviewed one minute of the tape, which was recorded on the day of Wheeler's arrest, with Roberts, and then Roberts claimed his laptop battery died and never returned to finish the review. Wheeler also asserts that Roberts did not return to discuss Wheeler's objections to the presentence investigation report. (*Id.*).

In a September 21, 2010 letter from Roberts to Wheeler, Roberts explained why he would not be pursuing some of the concerns that Wheeler had expressed to him. (Cv. Doc. 5, at 32). Roberts wrote:

> I will not be filing a documents [sic] alleging prosecutorial
> misconduct. I do not have proof of such and based on the information
> before me I do not have proof of police misconduct either. An
> ineffective assistance of counsel argument is an appellate issue that
> should be discussed with appellate counsel.

(*Id.*) Indeed, at Wheeler's sentencing, Wheeler tried to raise concerns about perjury and other

instances of alleged misconduct, and the court responded that although it had no evidence of any

perjury, "that may be something to be raised in the appellate level." (Cr. Doc. 83, at 5). Thus, it

was reasonable for Roberts not to raise these issues at sentencing.

Addressing Wheeler's concerns regarding the tapes, Roberts again explained that he

would not be filing a motion based on Wheeler's evidentiary concerns because these issues were

either trial or appellate issues. (Cv. Doc. 5, at 32).   Still, at sentencing, Roberts raised Wheeler's

concerns with the presentence investigation report. Thereafter, the court gave Wheeler the

opportunity to be heard on his challenges to the report. (*Id.*, at 3-6).

Roberts's September 2010 letter and his actions at Wheeler's sentencing show that

Roberts did consider Wheeler's concerns. Roberts, however, chose not to pursue some of the

allegations suggested by Wheeler because he did not have a basis to do so. Furthermore,

sentencing was not the appropriate place to raise most of Wheeler's concerns. The court's

responses to Wheeler's claims of misconduct confirm that these issues were trial or appellate

issues, rather than sentencing concerns.

Thus, Roberts's actions were reasonable. Roberts's duty as an attorney was to evaluate

the issues, and pursue only claims with merit, and only at appropriate times. Accordingly,

Roberts did not act incompetently under the *Strickland* standard for ineffective assistance of

counsel.

6.    Claims against Appellate Counsel

In ground 25 of his petition, Wheeler alleges that his appellate counsel Glennon Threatt also provided him with ineffective assistance of counsel. (Cv. Doc. 5, at 48). Wheeler contends that Threatt provided ineffective counsel because Threatt failed to communicate the substance of the appeal with Wheeler and because Threatt refused to reply to what Wheeler characterized as the "government's inaccurate reply to appellate brief." (*Id.*) Wheeler further alleges that Threatt never communicated with Wheeler to allow him to have input in the appellate filings. (*Id.*)

Again, Threatt characterizes his encounters with Wheeler differently. Threatt states:

> I visited him multiple times in the Morgan County Jail. During these visits, I discussed in detail with him all aspects of the case so that I had an understanding of his perception of possible issues on appeal. I also spoke to him by telephone on multiple occasions about his case. I spoke directly on multiple occasions with both his trial counsel, Bruce Gardner, and the counsel who handled the sentencing in his case, Kevin Roberts. Further, I had access to the entire transcript and record on appeal when preparing my brief in this case.

(Doc. 18-2, at 2). Threatt further explains that he read the many letters Wheeler sent him and "made the tactical and reasoned determination of: (1) what issues to include in the brief, (2) what authorities to cite in support of those issues, and (3) what arguments should be made in support of those issues." (*Id.* at 3). Threatt also asserts that he did not feel that a reply brief was necessary in reply to the goverment's response brief because Threatt believed that his arguments were already adequately laid out in the records, transcript, and initial brief. (*Id.*).

Wheeler's claims that Threatt failed to communicate with him or to seek his input on the appellate brief are without merit. Threatt states, to the contrary, that he communicated with Wheeler often and discussed all aspects of the case with Wheeler. Wheeler is unable to point to

35

any reason why Threatt's assertions are untrue.[8]

Furthermore, Threatt was not obligated to present all the issues mentioned by Wheeler on appeal. *See Jones v. Barnes*, 463 U.S. 745, 751 (1983) (explaining that defendants cannot compel counsel to make specific arguments, "if counsel, as a matter of professional judgment, decides not to present those points."). Threatt acted reasonably in only addressing the strongest arguments on appeal. *See id.* ("Experienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few key issues.").

Additionally, Threatt's decision not to file a reply brief was a strategic decision. This decision does not provide Wheeler a basis for relief because "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." *Strickland*, 466 U.S. at 690-91. Threatt's affidavit establishes that he made a reasonable investigation into Wheeler's case and considered the options available to him on appeal. The decision of whether to file a reply brief was within Threatt's discretion as an attorney. He considered the facts and reasonably determined that a reply brief was not necessary. Accordingly, the ineffective assistance of counsel claims asserted against Threatt do not provide a basis for relief.

_____

[8] In addition, Wheeler's repeated complaints about lack of communication with him by his three appointed counsel and his retained appellate counsel ring hollow. He had the benefit of four very good defense attorneys whose abilities and integrity are known to the court. Wheeler was a very difficult and demanding client who throughout this case thought he knew better than trained and experienced counsel–as demonstrated by his imprudent decision to take the witness stand against the advice of wise counsel and his repeated attempts to file matters pro se. (*See* Cr. Docs. 17-20, 85). The extent of his unreasonable demands on counsel for "communication" and otherwise are evident throughout the docket and record in this court.

Wheeler's claims of ineffective assistance of counsel against his trial attorneys, his sentencing attorney, and his appellate attorney all fail because Wheeler has not demonstrated that his attorneys acted unreasonably or that his attorneys' actions prejudiced him.

## IV.    Conclusion

In summary, Petitioner George William Wheeler's motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 lacks merit. Wheeler has failed to establish that he deserves a new trial or any other relief based on any of his claims. Therefore, the court DENIES Wheeler's motion.

DONE and ORDERED this 28th day of September, 2015.


KARON OWEN BOWDRE
CHIEF UNITED STATES DISTRICT JUDGE